UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEEP SOUTH EQUIPMENT COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-2164** |
| **JONES MOTOR GROUP, INC.,** <br> **HAMRE EQUIPMENT COMPANY, INC.,** <br> **PATRIOT BROKERAGE, INC. and PORTS** <br> **AMERICA SHARED SERVICES, INC.** | **SECTION: "M" (4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Enforce Settlement Agreement** filed by Jones Motor Group, Inc. Rec. Doc.35. The motion is opposed. Rec. Doc. 38 (Deep South Equipment Company and Hamre Equipment, Inc. Rec. doc. 43. A Reply to the plaintiff's opposition was filed. Rec. doc. 47. The matter was submitted on the briefs.

This matter was filed before the United States Magistrate Judge and was referred to the undersigned for hearings and resolution including a report and recommendation pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. (Rec. doc. 40)

**I.    Background**

    **A**.  **The Underlying Claim**

According to the complaint, Deep South Equipment Company ("Deep South") repaired a 2013 Hyster H1150HD-CH chassis container handler ("Hyster") and simply wants to be paid for it. At all relevant times, Ports America Shared Services, Inc. ("Ports America") was the owner of the Hyster. As part of a multi-party shipping agreement, Ports America hired Hamre Equipment Company, Inc. ("Hamre") to move the Hyster from Oakland, CA to New Orleans, LA. Hamre contracted a brokerage company, Patriot Brokerage, Inc. ("Patriot"), to assist with the transport. Patriot, in turn, subcontracted Jones Motor Group, Inc. ("Jones Motor Group"). On or about June

21, 2016, the Hyster left Oakland on a trailer leased from Jones Motor Group. While in route to New Orleans, the driver of the load, Adrian Brown, was involved in an accident in Texas, during which the Hyster was badly damaged.

Deep South was initially contacted by Ports America to repair its Hyster. Deep South was then put in contact with a representative of Jones Motor Group, who approved the initial service proposal and authorized Deep South to proceed with the repairs. Ports America commissioned plaintiff, Deep South to repair the Hyster. The Hyster was returned to Ports America, and it is now in use. A parts list, timeframe and updated quote were sent to Jones Motor Group and Patriot, who both authorized Deep South to proceed with the repairs. Deep South completed repairs on or about January 31, 2017, but the final invoice for $93,054.44 remained unpaid.

B. **The Settlement Dispute**

On October 29, 2018, counsel for the parties appeared before the undersigned for a settlement conference. After negotiating for close to two hours, the parties were able to reach a global settlement of all claims after Jones Motor agreed to pay $85,000 to Deep South. After securing an agreement of parties the Court confirmed the agreement on the record.

Jones Motor Group's counsel also expressly stated on the record that the settlement "included the claims by Deep South or any of the co-defendants in the case: and that "there will be a global release entered into as a material art of the settlement." (Settlement Transcript, October 29, 2018) Rec. Doc. 38-1. Counsel for Deep South, Mr. Langley, also confirmed on the record that there were no claims that originate by/through, or under Deep South. He also represented that Deep South has not filed and will file any liens or encumbrances against the piece of equipment that was repaired. (Settlement Transcript, Rec. doc. 38-1, P.4)

The Court thereafter inquired if there was anything further to add on the record by anybody at which point Hamre's counsel indicated that "Your Honor, just to be clear, this settlement will also resolve any and all claims that are among the other defendants arising out of this litigation. Id. No one else made statements on the record and the undersigned proceeded to notify the District Judge that the matter was resolved. The lawsuit was subsequently dismissed on October 30, 2018. Rec. doc. 34.

After the conference a dispute arose over the claims included in the release agreement. Specifically, Jones Motor Group contends the settlement should include all claims based on the same transition and occurrence, to include brokerage or transport fees incurred by Patriot, Jones Motor Group and/or others. All claims relative to the transportation of this equipment and the ensuing accident should be released

During a subsequent telephone conference, counsel for Patriot stated that he does not have authority to sign the settlement agreement even though he was present in the courtroom when the agreement was read onto the record and never expressed any opposition. Rec. doc. 38. Jones Motor Group contends that the release should include, at minimum, all claims based on the same transaction and occurrence, including brokerage or transport fees incurred by Patriot, Jones Motor Group and/or others. According to Jones Motor Group, the release should include all claims relative to the transportation of the equipment and the ensuing accident.

## II. Standard of Review

Where the substantive rights and liabilities of the parties derive from state law, state law governs the enforcement of the settlement agreement. *Rice v. Hanover Ins. Co.*, No. CIV.A.07-6245, 2009 WL 1564811, at *1 (E.D. La. June 1, 2009) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)); *see also Lege v. Wal-Mart Louisiana LLC*, No. CIV.A. 07-

01694, 2009 WL 5195949, at *3 (W.D. La. Dec. 30, 2009). Here, the substantive rights and liabilities arise from the laws of Louisiana and Louisiana Civil Code Article 3071 ("La. Civ. Code art. 3071") will govern the enforcement of the settlement agreement. *Rice*, 2009 WL 1564811 at *1.

An agreement is enforceable under La. Civ. Code art. 3071 if "1) it has been reduced to writing; *or* 2) it has been recited in open court and is capable of being transcribed from the record of the proceedings." *Id.* (emphasis in original). Thus, a settlement on the record is "unquestionably sufficient to meet the writing requirement set forth in Article 3071." *Id.* Furthermore, "recital of such agreements in open court must make full disclosure of the terms so that all parties concerned are fully advised and informed of their rights and obligations." *Kearns & Associates Co. v. Carter*, No. CIV.A. 10-439-SCR, 2014 WL 200425, at *1 (M.D. La. Jan. 17, 2014) (citing *Troxclair v. St. Charles Parish*, 450 So.2d 759, 761 (La. App. 5 Cir. 1984)). The settlement agreement shall be valid "only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached." *Abadie v. Metro. Life Ins. Co.*, 712 So. 2d 932, 934 (La. App. 5 Cir. 1998).

**III.   Analysis**

Evident from the parties' submissions and the transcript of the settlement agreement, is the consensus that the parties have an enforceable settlement agreement. Pursuant to Louisiana law, a settlement agreement is enforceable if it (1) is in writing or (2) was recited in open court and is capable of being transcribed from the record of the proceedings. La. Civ. Code art. 3071. Here, the settlement agreement was recited in open court and transcribed by a court reporter on October 29, 2018. Therefore, the agreement is enforceable pursuant to Louisiana law.

Despite participating in the conference, the confirmation of the settlement on the record before the undersigned and being asked if there were any additional terms or conditions, counsel for Patriot indicates that he has no authority to sign the release papers. Rec. doc. 39. However, the Court notes that he participated in the settlement discussion and the confirmation proceeding. Patriot contends that the release document excludes claims asserted in a related proceeding styled *Patriot Brokerage, Inc. v. Lee Hamre, et.* al, pending in Los Angeles, California.

While Patriot refuses to execute the release document, it has filed no opposition to the subject motion. There is otherwise no dispute over the terms of the agreement. Patriot's refusal to sign the release papers is immaterial to the agreement that was reached, as transcribed by the court reporter and reproduced. *Morris, Lee & Bayle, LLC v. Macquet* 192 So.3d. 198, 209 (La. App. 4 Cir. 2016)

Additionally, Patriots counsel has not expressed its position why there was no agreement. The Court, therefore, finds that the settlement agreement as recited in the record including the waiver of all claims that are among the other defendants arising out of the litigation are in accordance with the record. The Court further notes that certainly Patriot was in the best position to know that the impact of the settlement would include other claims arising from the same factual scenario but failed to speak up during the placement of the terms of the settlement on the record.

IV. **Conclusion**

**IT IS RECOMMENDED** that **Motion to Enforce Settlement Agreement (Rec. Doc. 35)** be **GRANTED as read into the record.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

                New Orleans, Louisiana, this 2nd day of January 2019.

                **KAREN WELLS ROBY**
                **CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.